UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PATRICIA PARAMOURE,

Plaintiff,

v.

GEI CONSULTANTS, INC., et al.,

Defendants.

No. 2:25-cv-02861-DJC-JDP

ORDER

Pending before the Court is Plaintiff's Motion to Remand the case to Sacramento Superior Court. Defendant removed the action to federal court under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d)(2). Plaintiff argues that remand is proper here because Defendant has failed to establish the requisite amount in controversy under section 1332(a) and/or section 1332(d)(2). For the reasons discussed below, the Court DENIES Plaintiff's Motion to Remand.

**BACKGROUND**

Plaintiff Patricia Paramoure filed the instant action on behalf of herself, and other employees similarly situated against Defendant GEI Consultants, Inc. (FAC (ECF No. 12-1) ¶ 4.) Plaintiff worked as a non-exempt, hourly employee from approximately May 2019 to June 2023, and then again from July 2023 to present day. (*Id.* ¶ 3.)

Plaintiff alleges failure to pay minimum wages in violation of California Labor Code §§ 1194, 1197, and 1197.1; failure to pay overtime wages in violation of Labor Code § 510; failure to provide required meal periods in violation of Labor Code §§ 226.7 & 512 and the applicable IWC Wage Order; failure to provide required rest periods in violation of Labor Code §§ 226.7 and 512; failure to provide accurate itemized statements in violation of Labor Code § 226; failure to reimburse employees for required expenses in violation of Labor Code § 2802; retaliation in violation of Labor Code § 1102.5; and a violation of the Unfair Competition Law. (*See generally*, FAC)

Plaintiff initially filed suit in Sacramento Superior Court, and Defendant removed the action under 28 U.S.C. § 1332(a) and 28 U.S.C. § 1332(d)(2). (Not. Removal (ECF No. 1) ¶¶ 10-12; 56.) Plaintiff now seeks to remand the action back to state court. (*See generally* Mot. (ECF No. 11).) The matter is fully briefed (Opp'n (ECF No. 14); Reply (ECF No. 17)) and was ordered submitted without oral argument (ECF No. 21.)

**LEGAL STANDARDS**

A defendant may remove a case from state court to federal court only if the federal court would have originally had subject matter jurisdiction over it. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

**I. CAFA**

Under CAFA, federal courts have original jurisdiction over class actions in which the parties are minimally diverse, the proposed class has at least 100 members, and the aggregated amount in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim Invs.,* 775 F.3d 1193, 1195 (9th Cir. 2015).

The removing party has the burden of establishing that CAFA's prerequisites have been met. *Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 683–85 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021–22 (9th Cir. 2007). This requires the removing party to plausible allege in the notice of removal that "the amount in controversy exceeds the jurisdictional threshold." *Ibarra,* 775 F.3d at 1197 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 94 (2014)).

Courts first look at the allegations in a complaint to determine the amount in controversy. *Id.* Where the complaint does not state an amount in controversy, "the defendant's notice of removal may do so." *Lopez v. Advanced Drainage Sys., Inc.,* 777 F. Supp. 3d 1100, 1104 (N.D. Cal. 2025) (citing *Dark Cherokee Basin,* 574 U.S. at 84). However, the plaintiff may challenge the amount in controversy, by making either a "facial" or "factual" attack on the defendant's jurisdictional allegations. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). "A facial attack accepts the truth of the [defendant's] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). A factual attack, on the other hand, contests the truth of the allegations themselves. *Id.* When a plaintiff mounts a factual attack, they "need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Id.* at 700.

"When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* at 699. A defendant "is only required to show that it is more likely than not that Plaintiff's maximum recovery reasonably could be over $5 million." *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1185 (E.D. Cal. 2020).

To make this showing, the defendant "must be able to rely on a chain of reasoning that includes assumptions." *Jauregui v. Roadrunner Transp. Servs. Inc.,* 28 F.4th 989, 993 (9th Cir. 2022) (citations and quotation marks omitted). These

assumptions must reflect more than "mere speculation and conjecture." *Ibarra,* 775 F.3d at 1197; *see Salazar v. Johnson & Johnson Consumer Inc.,* No. 2:18-cv-05884-SJO-E, 2018 WL 4560683, at *3 (C.D. Cal. Sept. 19, 2018) ("Courts have routinely remanded cases where amount in controversy calculations rely on speculative assumptions unsupported by evidence."). Assumptions can be "founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (internal quotations and citation omitted). Parties may also "submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." *See Ibarra*, 775 F.3d at 1197 (internal quotation marks omitted).

The Supreme Court and the Ninth Circuit have advised "that no antiremoval presumption attends cases invoking CAFA" partially because the statute was enacted "to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin,* 574 U.S. at 89 (citations and quotation marks omitted; *see Jauregui,* 28 F.4th at 992–93 (explaining that a district court erred when "putting a thumb on the scale against removal" where the defendant removed the case pursuant to CAFA). "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin,* 574 U.S. at 89; *see also Ibarra,* 775 F.3d at 1197.

*////*

*////*

*////*

*////*

*////*

*////*

*////*

*////*

*////*

## DISCUSSION[1]

### I. CAFA Jurisdiction

As an initial matter, neither Party disputes that the proposed class consists of at least 100 employees and that minimal diversity is satisfied. Rather, the dispute is whether the amount in controversy exceeds $5,000,000.

The Complaint does not specify an amount in controversy. Defendant alleges that the amount in controversy is $8,160,181.[2] (White Decl. (ECF No. 14-1) ¶ 46.) Plaintiff brings a factual attack, as she challenges the facts Defendants assume underly Plaintiff's claims.

#### A. Sufficiency of Defendant's Evidence

In opposing the Motion to Remand, Defendant offers a declaration from Sheryl White, the Lead Data Analyst for Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (*See generally* White Decl.) The Declaration attests to White's ability to perform analyses of timekeeping, payroll, and personnel data for attorneys at the firm for various wage and hour litigation matters. (*Id.* ¶ 2.) The Declaration explains that White was provided with data from Defendant to evaluate and calculate the potential exposure rate for the claims at issue. Courts have routinely accepted similar declarations in determining amount in controversy. *See Gonzalez v. Peak Cal. Rest. Grp.,* No. 3:25-cv-04068-AMO, 2025 WL 2934518, at *1–2 (N.D. Cal. Oct. 15, 2025) (collecting cases).

---

[1] Plaintiff filed a First Amended Complaint after filing the Motion to Remand. Although the FAC controls, where "the plaintiff after removal. . .by amendment of [her] pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 292 (1938). The Supreme Court's holding in *Royal Canin U.S.A. v. Wullschleger,* 604 U.S. 22 (2025) does not alter this. ("In both original and removed cases, an amendment reducing the alleged amount-in-controversy to below the statutory threshold. . . will usually not destroy diversity jurisdiction.").

[2] Defendant presented a different valuation of the amount in controversy in the Opposition than it presented in the Notice of Removal. Courts can construe both a defendant's opposition and evidence provided after the notice of removal as amendments to the original notice of removal. *See Gen. Dentistry For Kids, LLC v. Kool Smiles, P.C.,* 379 F. App'x 634, 636 (9th Cir. 2010) (explaining that Ninth Circuit precedent "holds that a district court may consider later-provided evidence as amending a defendant's notice of removal."). Accordingly, the Court construes the updated amounts in the Opposition as amendments to the Notice of Removal and will respond to calculations therein.

The calculations were based on records showing at least 223 Putative Class Members ("PCMs") who worked at any time for Defendant during the Relevant Time Period. (White Decl. ¶ 27.) This number changed depending on whether the shifts worked by the PCMs lasted at least 3.5 hours, longer than 5 hours or at least 8 hours. (*Id.* ¶¶ 28–31.)

**B. Overtime Wages**

Plaintiff's third cause of action alleges a failure to pay overtime compensation. Defendant calculates that $889,890 is put in controversy under this cause of action. Defendant based its calculation on the assumption that employees were not paid one hour of overtime for every five shifts and worked at least eight hours during the Relevant Time Period, which translates to a 20% violation rate. (White Decl. ¶ 39.) Plaintiff argues that Defendants have not provided enough evidence to show that the violation rate is reasonable.

To determine the estimated amount in controversy, Defendant first calculated each employee's average hourly wage by dividing each employee's total amount of regular earnings by their total number of regular hours worked during the relevant time period. (*Id.*) Then, Defendant calculated the total number of shifts each employee worked that were at least 8 hours in length. (*Id.*) Defendant then multiplied these shift counts (61,093) by the violation rate (20%). (*Id.*) The value of that calculation was then multiplied by the employees' average hourly wage and multiplied by 1.5. (*Id.*) The amounts were then aggregated for all PCMs, and a simple interest rate of 10% was applied.[3] (*Id.*) The total estimate was $889,890. (*Id.*)

The Court finds that the violation rate used was reasonable. Plaintiff alleges that she and other California Class members experienced improper compensation at applicable overtime rates "from time to time." (*See* FAC ¶ 7.) She also alleges that Defendant maintained a "policy and practice" of failing to accurately record overtime.

[3] Although Defendants include interest in their calculations, the Court does not consider it toward determining whether the $5,000,000 amount in controversy is met. *See* 28 U.S.C. § 1332(d)(2).

(*See id.* ¶ 72.) Courts have routinely found similar language to provide a reasonable basis for assuming a similar, or even higher, violation rate. *See Salatino v. American Airlines,* 719 F. Supp. 3d 1094, 1103 (S.D. Cal. 2024) (collecting cases where courts found violation rates of 20% reasonable where the complaint had "policy or practice" and/or "time to time" allegations). Thus, the overtime wages claim places $808,991 (Defendants' estimate minus the interest calculation) in controversy.

**C. Unpaid Minimum Wages**

Plaintiff also brings a cause of action for failure to pay minimum wages. Defendant estimates the unpaid minimum wages claim to put a total of $1,352,028 in controversy. Plaintiff challenges Defendant's assumption that every single employee experienced one hour of unpaid minimum wages every week, which translates to a 20% violation rate. (Reply at 1.)

Defendant calculated $1,352,028 by first assuming one hour of unpaid straight time for every five shifts worked during the Relevant Time Period at the California minimum wage applicable at the time of the shift worked. (White Decl. ¶ 37.) Then, Defendant calculated the value of the assumed unpaid minimum wages by multiplying the total number of shifts each employee worked each year by 20% and multiplying that number by the California minimum wage for that year. (*Id.*) The total amounts for each year for all PCMs was then aggregated. (*Id.*) Defendants added 10% interest for a total of 269,567. (*Id.*) The overall valuation also includes liquidated damages, which equals $245,061. (*Id.*) Finally, the total amount includes penalties under section 1197.1, which was $100 per initial violation for each employee and $250 for each subsequent pay period violation for each employee. (*Id.*) These total $100 (statutory initial violation penalty) multiplied by 174 PCMs to equal $17,400 for the initial violations, plus $250 (subsequent violations) multiplied by 3,280 (the number of pay periods worked during the one-year statutory period minus 174). (*Id.*)

The Court finds Defendant's assumptions here to be reasonable. Here, the allegations supporting this cause of action allege a "policy and practice" of minimum

wage violations. (*See* FAC ¶ 9.) "[C]ourts in this district have found an assumption of one hour of unpaid minimum wages per employee per workweek. . . to be reasonable. . .when a plaintiff alleges a policy or practice on the part of Defendants." *Demaria v. Big Lots Stores-PNS, LLC,* No. 2:23-cv-00296-DJC-CKD, 2023 WL 6390151, at *6 (E.D. Cal. Sept. 29, 2023). Accordingly, the Court adds $1,327,522 (discounting the interest calculation) to the total amount in controversy.

**D. Meal and Rest Break Claims**

Plaintiff also brings claims alleging meal and rest break violations. Defendant estimates that the meal break and rest break penalties are $1,376,030 and $3,732,397 respectively. Plaintiff argues that the calculations are improper because Defendant's violation rates are unsupported by the allegations in the Complaint.

Beginning with the meal break claims, Defendant calculated the value with an assumption that employees were not provided with compliant meal periods two times for every five shifts worked longer than 5 hours in length during the relevant time period (40% violation rate). (White Decl. ¶ 40.) Defendant then calculated each employee's average hourly wage by dividing each employee's total amount of regular earnings by their total number of regular hours worked according to the Defendant's payroll data during the relevant time period. (*Id.*) Defendant then multiplied the total number of shifts each employee worked that were longer than 5 hours in length by 40% and multiplied by the employee's average hourly wage. (*Id.*) Then the amounts were aggregated for all PCMs in addition to a 10% interest rate resulting in potential damages of $1,376,030. (*Id.*)

Defendant's use of a 40% violation rate is reasonable in light of allegations involving a "policy and pattern" of violations. (FAC ¶ 82). A defendant is not "required to comb through its records to identify and calculate the exact frequency of violations." *Lopez v. Aerotek, Inc.,* No. 14-cv-00803-CJC, 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015). Further, courts in the Ninth Circuit have found that a violation rate between 20% and 60% are reasonable where a "pattern and practice" of

violations are made in the context of unpaid meal claims. *Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 975 (E.D. Cal. 2023) (collecting cases). Thus, Defendant may include $1,250,936 in the amount in controversy.

Turning to the rest period claim, Defendant made its calculation with an assumption that Plaintiff was not provided with compliant rest breaks for every shift worked at least 3.5 hours in length during the Relevant Time Period (100% violation rate). (White Decl. ¶ 41.) Then, Defendant calculated each employee's average hourly wage by dividing each employee's total amount of regular earnings by their total number of regular hours worked according to the Defendant's payroll data during the relevant time period. (*Id.*) Defendant next multiplied the total number of shifts each employee worked that were at least 3.5 hours in length by the average hourly wage and the total amount was aggregated for all PCMs. (*Id.*) With a 10% simple interest, the total was $3,732,397. (*Id.*)

Defendant argues its use of a 100% violation rate is reasonable based on allegations in the Complaint that Plaintiff had a "rule" that stated employees were prohibited from leaving the premises for rest breaks.[4] (Opp'n at 12.) Plaintiff argues that such an assumption is unsupported, and there is limiting language such as "from time to time" employees had to work in excess of four hours without being provided rest breaks. (FAC ¶ 86.) Additionally, Plaintiff alleges Defendant had a "policy and practice" of failing to comply with rest periods. (*See* FAC ¶¶ 12, 44.) Although the Court is not convinced that a 100% violation rate is appropriate given the allegations, *see Serrieh,* 707 F. Supp. 3d at 975–76 (explaining that policy and practice allegations tend to support reasonable violation rates ranging from 25% to 40%), assigning a $0 value to the claim is also not warranted, *see Jauregui,* 28 F.4th at 994. Rather, the Court applies an assumption rate of 40%, which is the violation rate that Defendant urges for the meal break claim. *See Ramirez v. HV Glob. Mgmt. Corp.,* No. 21-cv-

[4] The First Amended Complaint deletes allegations of a "rule."

09955-BLF, 2022 WL 1210402, at *6 (N.D. Cal. Apr. 25, 2022) (assuming a 25% violation rate "as Defendants urge for other claims" where the defendants' 100% violation rate was unsupported by the complaint). With that assumption in place, the value of the rest break claims is $1,343,662.

**E. Waiting Time Penalties**

Plaintiff also seeks waiting time penalties under Labor Code § 203. Defendant estimates the value of its waiting time penalties to be $427,236. Plaintiffs argue that the use of a 100% violation rate was unreasonable.

Defendants calculated this value by counting the number of PCMs who separated employment during the three-year statutory period beginning August 20, 2022, through October 2, 2025. Then, each separated employee's last hourly wage was multiplied by the average number of hours each employee worked per day during the Relevant Time Period. That amount was then multiplied by 30 days. The total value was $427,236. In applying the violation rate, Defendants relied on allegations of a uniform, companywide pattern of practice that underpaid wages, prohibited duty free breaks, and left amounts outstanding at separation. Moreover, Defendants point to allegations of the conduct being intentional and willful to support the 100% violation rate.

The Court finds that such a violation rate is supported by the Plaintiff's allegations and adds $427,236 to the amount in controversy. *See Noriesta v. Konica Minolta Bus. Sols. U.S.A., Inc.,* No. 19-cv-0839-DOC (SPx), 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019) (holding that if "Defendant had a 'pattern and practice' of refusing to grant meal and rest breaks or pay class members for all hours worked, then it is likely that all or nearly all class members experienced [waiting time] violations").[5]

---

[5] The Court need not reach whether Defendants' remaining assumptions are reasonable because Defendants' other calculations sufficiently demonstrate that the amount in controversy exceeds $5,000,000. *See, e.g., Flores v. LGS Staffing, Inc.,* No. 5:25-cv-02755-FWS-PD, 2026 WL 266273, at *4, n.2 C.D. Cal. Feb. 2, 2026).

* * *

On these claims alone, the Court finds that Defendant has adequately established an amount of controversy of $5,158,347.

**F. Attorney's Fees**

Finally, Defendants' attorneys' fees calculations based on the above-listed claims are also reasonable. Attorneys' fees are included in the amount-in-controversy determination where the underlying statutes authorize an award of attorneys' fees. *Arias*, 936 F.3d at 927 (9th Cir. 2019); *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018). Although, "attorneys' fees shifting provisions in California Labor Code §§ 218.5 and 1194 do not apply to legal work relating to meal and rest period claims," *Fritsch,* 899 F.3d at 796 (citing *Kirby v. Immoos Fire Prot., Inc.*, 53 Cal. 4th 1244, 1255 (2012)), Plaintiff brings a derivative UCL claim and would be entitled to attorneys' fees on that claim pursuant to Cal. Code Civ. Proc. § 1021.5. *See Barrett v. Armadillo Holdings, LLC*, No. 1:22-cv-00882-DJC-DB, 2024 WL 1133419, at *8 (E.D. Cal. Mar. 15, 2024); *see also* Cal. Code Civ. Proc. § 1021.5 (providing that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest" if certain conditions are met). Therefore, the Court may consider both the attorneys' fees derived from Plaintiff's meal and rest break claims as well as the overtime claim. Defendants' assumption that attorneys' fees would constitute 25% of the damages calculated above is reasonable. (*See* Opp'n at 16–17.) The Ninth Circuit has rejected a "per se rule" that, "as a matter of law, the amount of attorneys' fees in controversy in class actions is 25[%] of all other alleged recovery," and explained that the fee calculation is "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Fritsch,* 899 F.3d at 796. However, Defendants' argument is supported by a prior declaration from Plaintiff's counsel seeking 25% in attorneys' fees in a similar matter. (Opp'n at 17 citing Ex. 1 (ECF No. 15-1.) Accordingly, the Court

finds that Defendant has met its burden. As such, the Court finds that at least an additional $1,000,000 is placed in controversy [$5,158,347 x 0.25%].

* * *

In all, the claims up to this point present an amount in controversy over $5,000,000. Moreover, the Court finds that Defendant's violation rates are reasonable in light of Plaintiff's allegations. Because Defendant "relied on a reasonable chain of logic and presented sufficient evidence to establish that the amount in controversy exceeds $5 million, Defendant has met its burden of proof. *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200–01 (9th Cir. 2015).

**CONCLUSION**

Accordingly, Plaintiff's Motion to Remand (ECF No. 11) is DENIED.

IT IS SO ORDERED.

Dated: **August 20, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – PARAMOURE25cv02861.mtr_v3